## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**MORDHORST CLEANING, LLC d/b/a BLUE RIBBON EXTERIORS AND CONSTRUCTION**, a Colorado limited liability company,

      Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY**, an Illinois corporation,

      Defendant.

---

### COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiff Mordhorst Cleaning, LLC dba Blue Ribbon Exteriors and Construction (collectively "Plaintiff"), by and through its attorneys, Furtado Law PC, and submits its Complaint and Jury Demand against the above-named Defendant Allstate Insurance Company, and states as follows:

### I.  NATURE OF THE ACTION

1.    Plaintiff brings this action by assignment of claim seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation.

## II.     PARTIES

2.      Mordhorst Cleaning, LLC ("Plaintiff") is a Colorado limited liability company that does business in Colorado under the trade name Blue Ribbon Exteriors and Construction. The members of Mordhorst Cleaning, LLC are Ryan Mordhorst and Richard Mordhorst. Both members are citizens of Colorado and are domiciled in Colorado.

3.      Allstate Insurance Company ("Defendant") is a foreign corporation with its principal place of business located in Illinois and is licensed to do business in Colorado.

## III. JURISDICTION AND VENUE

4.      Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5.      Brenda Martinez sought and obtained an insurance policy, Policy No. 987 501 764 (hereinafter "the Policy"), from Defendant for residential property located at 415 Lilac Court, Louisville, CO 80027 (hereinafter "the Property").

6.      On or about June 18, 2018, during the Policy period, a hailstorm hit the Property causing property damage.

7.     On or about June 3, 2019, Ms. Martinez filed her insurance claim with Defendant and Defendant issued her claims number 270877/SLL.

8.     On or about June 7, 2019, Defendant conducted its first inspection of the claim. At the inspection, Defendant's adjuster Natalie Leblanc only allowed for limited repairs of roofing elements, and she issued Ms. Martinez a claim payment of $147.84.

9.     On or about July 9, 2019, Ms. Martinez hired Big Dog Construction Group to inspect the roof.

10.     On or about July 9, 2019, Big Dog drafted a supplemental estimate alleging that a full roof replacement was owed on the claim with a replacement cost value of $11,734.73.

11.     On or about July 25, 2019, based upon this estimate, Defendant agreed to reinspect the property with Marco Hernandez with Big Dog.

12.     However, at the re-inspection, Defendant's adjuster Brannon Lowery did not agree that a roof replacement was owed on the claim from the date of loss damages.

13.     On or about July 26, 2019, Defendant sent out a denial letter based upon its re-inspection.

14.     On or about August 27, 2019, Plaintiff retained Infinity Restoration to provide a supplemental bid for hail damage repairs.

15.     On or about August 27, 2019, Keith Igoi with Infinity drafted an estimate and documented the loss with photos.

16.     On or about August 27, 2019, Mr. Igoi sent its estimate and photos to Defendant for review. Upon information and belief, Defendant responded to this submission by denying Ms. Martinez's request for a re-inspection.

17.     Upon information and belief, Defendant incorrectly reviewed the documentation submitted by Mr. Igoi as not showing hail damage when in fact it did show hail related damage.

18.     Upon information and belief, a third re-inspection of the Property was necessary to compare Mr. Igoi's photos to actual property damage and to properly identify hail damage that was present in the photos.

19.     Upon information and belief, Defendant never denied coverage due to late notice of claim or due to prejudice in evaluating the claim due to late notice.

20.     On or about March 11, 2020, Ms. Martinez filed a department of insurance complaint with the Colorado division of insurance.

21.     On or about March 30, 2020, Defendant's adjuster Jeremy Sawyer sent a response letter to DORA stating that among other things he wanted to get an engineering inspection done at the Property to support Defendant's prior denial.

22.     Upon information and belief, the letter's writing suggests that Mr. Sawyer wanted to retain an expert solely to support Defendant's position and admittingly showed that Defendant's engineering inspection would be biased in favor of Defendant.

23.     The letter also stated that Defendant would participate in appraisal if requested by Ms. Martinez.

24.     On or about April 22, 2021, Kurt Smith with Claims Rangers sent his letter of representation as Ms. Martinez public adjuster to Defendant. The letter of representation also requested a tolling agreement of the claims.

25.     Upon information and belief, Defendant never responded to the tolling agreement request.

26.     On or about April 23, 2021, Defendant sent Claims Rangers a letter acknowledging receipt of a structural estimate of repairs with a replacement cost value of $54,263.86 and accompanying photos. However, the letter denied coverage for the estimate simply because the estimate disagreed with Defendant's prior decision on the claim. In the alternative, Defendant agreed to conduct another re-inspection of the claim.

27.     On or about April 30, 2021, Defendant's adjuster Anthony Bloom sent Claims Rangers a letter outlining that Ms. Martinez had $5,000.00 in coverage for mold damage.

28.     On or about May 24, 2021, Defendant's adjuster John Morrison sent Claims Rangers an email with his updated estimate, but he also summarized the dispute of the increased cost of roughly $32,000 below as follows:

   a. He stated that Defendant will not pay GCOP unless there are two or more licensed and specialized trades involved.

   b. He noted that Defendant will not pay for worn out decking.

   c. He noted that siding was not covered because the only damage was to the paint.

   d. He stated that Defendant just does not supervision costs on a job like this generally.

e. He denied forklift operator expenses since the solar bid covered the same.

f. He stated that the job does not require a 1–3-ton dumpster for removal of debris.

29.   On or about June 6, 2021, Mr. Morrison sent Claims Rangers a letter outlining that the claims replacement cost value was now only $12,818.72.

30.   On or about June 16, 2021, Defendant's adjuster LaHope Rand sent Mr. Smith a response letter denying coverage for osha safety requirements, updating Defendant's price list, replacement of wood siding, Xactimate pricing for supervision hours, temporary toilet use, removal and replacement of decking, GCOP and what Defendant considered was excessive debris removal.

31.   However, the letter further explained as follows:

a. Since Xactimate allows for debris removal in the line item for shingle removal, Defendant believed large dumpsters were not necessary on the job.

b. Since Xactimate includes supervision in its labor rate, additional residential supervision was excessive.

c. Siding was denied due to Defendant's inspection of siding.

d. GCOP was not owed because Defendant did not believe a general contractor was necessary on the claim.

e. Defendant denied adjusted the price list to current prices but agreed to review this item subject to production of material invoices showing higher prices for materials.

f. Defendant denied osha compliance requirements stating that they were instead included in a contractor's normal operating expenses.

g. Regarding roof decking, Defendant denied coverage but did not provide a logical reason for its denial other than to say it was not part of the covered loss.

32.    Upon information and belief, Defendant's coverage position above for a-b contradicts Xactimate white papers which allows for consideration regarding the above line items.

33.    Regarding Defendant's position on GCOP, Defendant's denial was unreasonable because it presumes that a general contractor simply is not necessary for the job instead of whether Ms. Martinez is allowed to hire one. To the extent that Ms. Martinez hires a general contractor, GCOP is necessary for the job.

34.    Regarding item E above, Defendant's denial was unreasonable because Colorado law allows for payment of replacement cost based solely on an insurer-based methodology like Xactimate. Do the extent that Xactimate's price lists varied over time, Defendant should have by industry standard adjusted its list to match Xactimate's price list for current pricing.

35.    Upon information and belief, Colorado law does not limit replacement cost to actual costs on invoicing.

36.    Regarding item F above, Defendant's denial is improper since Ms. Martinez had ordinance and law coverage and OSHA requirements are mandated legal requirements for each job performed by Plaintiff. They are not costs absorbed in Xactimate pricing and in fact xactimate's estimate makes no mention of where such requirements would be accounted for in the bid.

37.    Further, the letter explained that to-date, general contractor overhead and profit was not owed on the claim because Defendant's prior inspections did now show that the job required complexity.

38.     Upon information and belief, the denial of GCOP merely recites Defendant's decision on its estimate and does not reflect any consideration for GCOP based upon Claims Ranger's estimate.

39.     On or about April 2021, Plaintiff verified that matching replacement siding was no longer available and that the product on the Property was obsolete.

40.     Ms. Martinez has since assigned her insurance claim to Plaintiff.

41.     Although Plaintiff provided Defendant with the necessary documentation to recover covered benefits, Defendant has unreasonably delayed and denied Plaintiff claims for benefits by failing to conduct a reasonable investigation of Plaintiff' damages and failing to properly adjust the loss with all available information.

42.     As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff' claims for benefits due and owing under the Policy, Plaintiff have incurred and continues to incur damages.

## V.      FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

43.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

44.     The Policy creates a contract of insurance.

45.     By its actions, as described above, Defendant breached the contract of insurance by failing to consider all relevant information submitted by Plaintiff on the claim and failing to pay covered benefits under the Policy.

46.     As a direct and proximate result of said breach, the Plaintiff are entitled to damages in an amount to be determined at trial.

## VI.    SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

47.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

48.    C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

49.    Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

50.    Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

51.    C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

52.    Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1.    Damages for Defendant's breach of contract;

2.    All unpaid covered benefits owed under the party;

3.    Two times the amount of all covered benefits under the Policy;

4.    Costs, expert witness fees, and attorneys' fees per statute incurred in

prosecuting its claims;

5.     Pre- and post-judgment interest; and

6.     For such other and further relief as this Court may deem just.

**PLAINTIFF DEMAND A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted this 1st day of October 2021.

FURTADO LAW PC

_/s/ Nathanael Archuleta_
David Furtado, Esq.
Nathanael Archuleta, Esq.
Furtado Law PC
3773 Cherry Creek North Drive,
Ste. 755
Denver, CO 80209
Telephone: (303) 755-2929
Email:          Dfurtado@furtadolaw.com
                     Nathanael@furtadolaw.com
***Attorneys for Plaintiff***